**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1st STREET FOUNDATION, INC. d/b/a<br>FIRST STREET FOUNDATION,<br><br>                   Plaintiff,<br><br>    -against-<br><br>SSBN LTD, d/b/a FATHOM and CLIMATE<br>CHECK, INC.,<br><br>                 Defendants. | Case No. 21cv1374 _____<br><br><br><br>**COMPLAINT** |

Plaintiff 1st Street Foundation Inc. ("First Street"), by its undersigned attorneys, hereby alleges as follows against Defendants SSBN LTD d/b/a Fathom ("Fathom") and Climate Check, Inc. ("ClimateCheck").

## <u>NATURE OF THE ACTION</u>

1.       First Street has been forced to file this action seeking immediate and permanent injunctive relief because its business partner, Fathom, admittedly breached a July 26, 2019 Services and Data Rights Agreement (the "Agreement") between First Street and Fathom by purporting to license First Street's proprietary, confidential inland flood data (as used herein and defined further below, First Street's "Future Inland Flood Data") to First Street's direct competitor, ClimateCheck.

2.       Despite admitting that it breached the Agreement, Fathom has refused to immediately cease providing First Street's Future Inland Flood Data to ClimateCheck.  And ClimateCheck has refused to stop using First Street's Future Inland Flood Data in software products that ClimateCheck has already sold to potential First Street customers and continues to market to other potential customers.  When First Street demanded that Fathom immediately cease and desist from supplying any more of First Street's confidential Future Inland Flood Data

to ClimateCheck, Fathom originally promised to cancel the license. But, incredibly, after First Street pressed Fathom for an update, Fathom declared that rather than cancel the license, Fathom actually entered into *another* "license" with ClimateCheck that would give ClimateCheck continued access to First Street's proprietary data for an additional four months. During this time ClimateCheck will continue to use First Street's Future Inland Flood Data in software products that it has already sold and is currently marketing to First Street's potential customers.

3.     Fathom's breach has already caused irreparable harm to First Street's competitive position because ClimateCheck has already acquired customers and solicited potential customers by passing off First Street's proprietary Future Inland Flood Data as part of ClimateCheck's own product. Giving ClimateCheck an additional four months of access to First Street's intellectual property will only compound the damage unless this Court provides immediate relief.

4.     First Street therefore asks that this Court enter an order: (i) enjoining Fathom from continuing to provide any of First Street's confidential, proprietary flood data—or any associated technical support, upgrades, or other information regarding the data—to ClimateCheck; (ii) barring ClimateCheck from using First Street's proprietary flood data in any manner whatever; and (iii) ordering that ClimateCheck destroy any of First Street data unlawfully in ClimateCheck's possession or products.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper pursuant to 28 U.S. Code § 1331 because First Street is asserting a claim against ClimateCheck for a violation of the Defend Trade Secrets Act, 28 U.S.C. § 1836 (the "DTSA"). The Court has supplemental jurisdiction over First Street's breach of contract claim against Fathom pursuant to 28 U.S.C. § 1367 because, as set forth herein, that claim is inextricably related to First Street's claim against ClimateCheck under the DTSA.

2

6.     In addition, jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Complete diversity exists because, as set forth below, First Street is a Brooklyn-based nonprofit organized under the laws of the District of Columbia and, upon information and belief, Fathom is a United Kingdom corporation and ClimateCheck is a Delaware corporation. The amount in controversy requirement is satisfied because First Street is seeking a temporary restraining order and preliminary injunction to prevent Fathom from providing to ClimateCheck—First Street's direct competitor—First Street's trade secrets, which First Street spent millions of dollars to develop. ClimateCheck is now using First Street's Future Inland Flood Data to secure contracts with partners worth at least hundreds of thousands of dollars—customers that First Street may have entered into agreements with but for Fathom's and ClimateCheck's violations of First Street's intellectual property rights. In addition, pursuant to the Agreement, Fathom is required to indemnify First Street for the expense incurred in bringing this action, including attorneys' fees that alone likely will exceed the jurisdictional minimum.

7.     In Section 10.4 of the Agreement, Fathom agreed that "nothing in this Agreement prohibits any Party from approaching any court having competent jurisdiction to seek injunctive relief." This Court has personal jurisdiction over Fathom because Fathom's breach of contract has caused First Street direct, irreparable harm in New York. Fathom regularly does or solicits business in New York, including through its contractual relationship with First Street and, on information and belief, with other significant business partners located in New York. Further, Fathom derives substantial revenue from international commerce and expects, or reasonably should expect, its breach of the Agreement to have consequences in New York given that First developed critical data for the Future Inland Flood Model (defined below)—which in turns

3

generates the Future Inland Flood Data at issue here—in Brooklyn, New York. First Street also uses the Future Inland Flood Data to offer flood risk ratings for properties located in New York and to New York-based customers, including through First Street's partnerships with Redfin and Realtor.com. In addition, First Street regularly works on the Future Inland Flood Model using computers located in Brooklyn, New York. In addition, Fathom expects, or reasonably should expect, to be sued in New York in an action seeking injunctive relief given that the Agreement is governed by New York law, and Fathom agreed to New York as the arbitral forum in any claim for damages arising out of or relating to a breach of the Agreement.

8.     The Court also has personal jurisdiction over ClimateCheck because ClimateCheck regularly does or solicits business in New York, including by offering a "climate change risk snapshot" for free and a "premium report" for sale to customers located in New York State and Brooklyn, New York. Each "climate change risk snapshot" and "premium report" provides a "flood risk" that is generated using First Street's confidential, proprietary Future Inland Flood Data—which Fathom improperly provided to ClimateCheck in breach of the Agreement and which ClimateCheck continues to use despite being on notice that it has no legal right to use that data. ClimateCheck therefore is knowingly causing continuing harm to First Street in New York.

9.     Venue is proper pursuant to 28 U.S.C. § 1391 because "a substantial part of property that is the subject of the action"—First Street's Future Inland Flood Data—"is situated" in First Street's Brooklyn, New York office, and because both Fathom and ClimateCheck are subject to personal jurisdiction in this judicial district.

## THE PARTIES

10.     First Street is a 501(c)(3) not-for-profit research and technology company organized under the laws of the District of Columbia with its principal place of business in

215 Plymouth Street, Floor 3, Brooklyn, NY 11201. First Street's mission as a nonprofit is to develop cutting edge software models and data to estimate the flood risk for individual properties in order to empower individuals to protect their homes from flooding. In furtherance of that mission, First Street has developed the first comprehensive flood risk model in the United States.

11.     Upon information and belief, SSBN Ltd. is a limited liability corporation organized under the laws of the United Kingdom with the trading name "Fathom" and its principal place of business in Bristol, England. On information and belief, Fathom is a for-profit company that develops flood risk models for sale or license. As set forth below, Fathom and First Street entered into a partnership to develop flood risk models and resulting data pursuant to the terms of the Agreement. Under the Agreement, First Street owns the intellectual property rights to the resulting data at issue here.

12.     Upon information and belief, ClimateCheck, Inc. is a Delaware corporation with its principal place of business in Tallahassee, Florida. According to its website, ClimateCheck creates software products that "expos[e] and quantify[] the risks related to the climate crisis through our proprietary risk assessment and report." ClimateCheck sells its complete "risk assessment and report" to consumers across the United States for "a one-time cost of $499." ClimateCheck also markets its "risk assessment and report"—including a purported "flood risk" estimate—for sale or license to other companies, such as real estate brokerages.

### FACTUAL BACKGROUND

**A.      First Street Has Spent Millions of Dollars to Develop Proprietary, Cutting Edge Flood Models That First Street Licenses to Fund Its Mission.**

13.     By using its proprietary, cutting-edge modeling techniques, First Street has analyzed past flooding events and estimated present and future flood risk for every home and property in the contiguous United States. High-level versions of these parcel-specific flood risk

5

calculations are accessible for free to the public via a First Street-owned website, FloodFactor.com, where each such home and property is given a risk score, known as a FloodFactor®, ranging from 1 to 10, that reflects a particular property's risk of flooding over the course of a 30-year mortgage. The FloodFactor® provides critical information to Americans making what could be one of their most significant financial decisions—whether to buy or sell a home. First Street has released its flood data in aggregated form for public, noncommercial use through the AWS Public Data Set—an "open data" registry and repository provided by Amazon Web Services—and provides the FloodFactor® rating to the public free of charge.

14. First Street's flood models also generate proprietary geospatial data, known as Hazard Layers, which enable First Street to provide a visual representation of estimated flood risk on a map. Hazard Layers are complex calculations that represent the depth of potential flooding that will occur in a given location based on the conditions defined in a given data model (e.g., a particular model may be tailored to account for inland flooding scenarios or, alternatively, coastal flooding scenarios) and the probability of a flooding event. Each First Street model can be used to produce sets of Hazard Layers, which are based on different probabilities of flooding. For example, one Hazard Layer could assume a scenario where there is flooding every other year (a 50% probability) to flooding that occurs once in 500 years (a .02% probability). Below is an example of how a Hazard Layer for a 5% flooding possibility appears on the FloodFactor® website:





15.      As part of conducting its business and furthering its mission, First Street licenses its flood models and associated Hazard Layers to third parties, including academic researchers and universities.  First Street grants its licensees access to an Application Programming Interface, or API, that First Street has developed to allow third parties to seamlessly access First Street's confidential, proprietary flood risk models and Hazard Layers for certain noncommercial purposes, such as research, internal and external analysis, and public display purposes.

16.      In addition to licensing its API for academic and public sector uses, First Street licenses API to businesses for commercial, for-profit uses through a wholly owned for-profit subsidiary, Risk Factor.  Licensing its models and Hazard Layers to businesses for commercial use is a critically important source of income and funding for First Street's nonprofit mission.

For example, First Street, through Risk Factor, has entered into an agreement with Redfin, a real

estate brokerage that allows Redfin's website to generate and display a FloodFactor® score and

Hazard Layers for a property when a Redfin user searches for a particular piece of property. An

example of how First Street's FloodFactor® and Hazard Layers are integrated into Redfin's

website for a property, 183 Plymouth Street, located in Brooklyn is below:



17.     First Street, through RiskFactor, entered into a similar licensing contract with

Realtor.com.

18.     Although First Street has released its flood data in aggregated form for public,

noncommercial use and provides the FloodFactor® rating to the public free of charge, First Street

does not publicly release its non-aggregated, underlying data, or its proprietary models that

First Street uses to generate its FloodFactor® rating and Hazard Layers, and that it licenses to

third parties such as Realtor.com and Redfin. Further, First Street's underlying proprietary

non-aggregated data sets and models cannot be reverse engineered from the data that First Street

has released publicly, without tremendous effort and a significant investment of resources. Rather, First Street's underlying data and data models are proprietary, confidential trade secrets that First Street spent millions of dollars to develop. Accordingly, when First Street enters into agreements with third parties, to provide access to use its API, First Street always requires that its counterparties agree to keep First Street's non-aggregated data and models strictly confidential and contractually limits the counterparty's use of such data to a particular business purpose.

**B.** **First Street and Fathom Agreed to Develop Certain Propriety Flood Models and Output Data Owned by First Street.**

19.    In order to further perfect its modeling or develop new risk flood models and Hazard Layers, First Street will, from time to time, enter into agreements with other organizations that provide certain datasets or modeling services.

20.    In or around 2019, First Street began discussing a partnership with Fathom. First Street and Fathom sought to leverage their respective expertise to jointly develop and customize flood risk models, subject to certain ownership rights and restrictions as to how any models and jointly developed data could be used.

21.    The Agreement memorializes the terms of First Street's and Fathom's direct business partnership. Specifically, under the Agreement, Fathom agreed to customize and/or develop certain "Data Models" at First Street's direction that would in turn create "Output Data," including Hazard Layers. (Agreement § 1.1.)

22.    The Agreement provides that "First Street will own all right, title and interest in and to any Work Product developed under this Agreement and all Intellectual Property Rights therein." (*Id*. § 1.14.) "Work Product" is defined as "all Output Data, information, Data Models,

or other materials and information . . . that are invented, authored, or developed by or on behalf of Provider under this Agreement."  (*Id.*)

23.    Fathom agreed to "not use or disclose the Work Product or any First Street data, information, or other materials except as otherwise expressly provided in this Agreement."  (*Id.* § 1.14(d)).  Fathom also agreed that Work Product, including Output Data, would be considered First Street's Confidential Information.  (*Id.* § 4.1.)  And to ensure that the proprietary flood models and data developed under the Agreement remain confidential, Section 4.3 of the Agreement provides that Fathom:

> "will use all reasonable and due care (and in any event no less care than is used to protect its own confidential information of like importance) to safeguard [First Street's] Confidential Information. Except as otherwise specifically stated in this Agreement, [Fathom] will not, either directly or indirectly, (a) divulge, disclose or communicate such Confidential Information to any third party or (b) use, in whole or in part, [First Street's] Confidential Information any purpose other than to perform its obligations under this Agreement."

24.    A breach of this confidentiality provision is not subject to the limitation of liability provision in the Agreement.  (*Id.* at § 8.2.)

25.    Fathom was nevertheless permitted in certain circumstances to resell certain Output Data, including Hazard Layers, owned by First Street, as to be specifically agreed in a Statement of Work.  (*Id.* §§ 1.14(d); 2.1.)  But the Agreement makes clear that First Street "retains, and any and all of its Intellectual Property Rights in the Output Data" subject to the terms of the Agreement.  (*Id.* § 2.3.)

26.    With respect to Fathom's obligations under these "resale" provisions in the Agreement, Fathom agreed to fully indemnify First Street against "all judgments, demands, liabilities, losses, expenses (including reasonable attorneys' fees and costs), fines, penalties, taxes or damages arising out of or relating to a third party claim that results from (a) the failure

of Reseller to comply with applicable laws, (b) any negligent act or omission of Reseller or its personnel (including recklessness or willful misconduct) in connection with the performance of its obligations under Section 2, or (c) Reseller's breach of any agreement with a third party or End User in connection with reselling the Output Data." (*Id*. § 2.9.)

27.     Finally, Fathom agreed to fully indemnify First Street against "any and all judgments, demands, liabilities, losses, expenses (including reasonable attorneys' fees and costs), fines, penalties, taxes or damages arising out of or relating to a third party claim that results from (a) any breach (or claim or allegation that, if true, would be a breach) by Provider of this Agreement [or] (b) any negligence or intentional misconduct, or any failure to comply with applicable law or regulation, by Provider or any Provider personnel." (*Id*. § 8.1.)

**C.     First Street's Ownership of Certain Flood Models and Output Data Under Statement of Work No. 1 to the Agreement.**

28.     Contemporaneously with executing the Agreement on July 26, 2019, First Street and Fathom entered into a statement of work ("Statement of Work No. 1" or "SOW1").

29.     Pursuant to Statement of Work No. 1, the parties agreed that Fathom was to create five models, referred to as "Deliverables" and specified the division of ownership for these Deliverables and any resulting data output sets.  (SOW1 § 4.C.)

30.     As relevant here, Fathom agreed to develop an improved version of its previously existing inland flood model to include certain additional flood data, as specified by First Street. Among other things, this included modifying the model to account for future events by incorporating climate change data sets provided by First Street.  Although Fathom is responsible for developing this "Improved Future Inland Model", First Street owns the resulting "Improved Future Inland Model Hazard Layers" (hereinafter, the "Future Inland Flood Data") generated through use of the Improved Future Inland Model.  (*Id.* §4.C.2.)

11

31.    The Future Inland Flood Data is First Street's proprietary intellectual property and trade secret.

32.    The Future Inland Flood Data is incorporated into to First Street's flood risk products that are offered to consumers and customers throughout the United States.

33.    Although Fathom retained the right to sell the Future Inland Flood Data, Fathom explicitly agreed that it would not "not sell any Hazard Layers to any First Street Competitor." (SOW1 § C.9.).

34.    The Agreement defines "First Street Competitor" to mean "any third party who (i) uses flood data (or similar data) to build consumer facing applications, products or services, or (ii) provides flood data (or similar data) to third parties who build consumer facing applications, products or services."  (Agreement § 11.2.)

**D.    Fathom Admittedly Breached the Agreement by Purporting to License First Street's Future Inland Flood Data to First Street's Direct Competitor, ClimateCheck.**

35.    On or about January 15, 2021, First Street first became concerned that Fathom may have provided First Street's proprietary data and information, including the Future Inland Flood Data, to ClimateCheck.  Specifically, another First Street business partner gave First Street's Executive Director, Matthew Eby, a copy of a PowerPoint presentation from ClimateCheck that purported to show a flood risk model that ClimateCheck was offering to potential business partners.  ClimateCheck represented that it was relying on a Fathom model for its United States "Inland Flood" Data.  To First Street's knowledge, at the time, Fathom was only offering for sale or license United States Inland Flood Data that was owned by First Street pursuant to the terms of the Agreement.

12

36.     The same day, Mr. Eby contacted Chris Sampson and Andrew Smith at Fathom for more information and told them that First Street was concerned, in particular, because ClimateCheck is a direct competitor of First Street.

37.     ClimateCheck directly competes with First Street in developing and selling climate change-related risk models and associated data but, on information and belief, ClimateCheck has not developed any of its own flood risk datasets or flood modeling. Instead, on information and belief, ClimateCheck relies primarily on publicly available flooding data from the National Oceanic and Atmospheric Administration ("NOAA").

38.     On January 19, 2021, Mr. Eby emailed Gavin Lewis, Fathom's Commercial Director, Mr. Smith, and Mr. Sampson ahead of a call with Fathom that was scheduled to discuss First Street's concerns regarding ClimateCheck. In that email, Mr. Eby notified Fathom that it was "currently in breach of our contract" by providing First Street's proprietary, confidential data to ClimateCheck.

39.     In the emails in response, no one at Fathom denied Fathom was in breach of the Agreement.

40.     During a January 20, 2021 phone call, Mr. Smith at Fathom informed Mr. Eby that Mr. Lewis licensed First Street's proprietary data to ClimateCheck by "mistake."

41.     No one at Fathom has ever disputed, nor could dispute, that providing First Street's data to ClimateCheck is a breach of the Agreement.

42.     On January 21, 2021 Mr. Sampson told Mr. Eby, via email, that Fathom was in the process of cancelling its licensing contract with ClimateCheck. Mr. Sampson also sent Mr. Eby a spreadsheet that purports to reflect royalties owed to First Street for the fourth quarter of 2020, and indicates that the license granted by Fathom to ClimateCheck was for the "US

13

Inland 2050" data set. The US Inland 2050 dataset is the Future Inland Flood Data—i.e., the Output Data, or Hazard Layers, from the Improved Future Inland Model that First Street owns and that Fathom was prohibited from licensing to a competitor like ClimateCheck. That spreadsheet also reveals that Fathom licensed the Future Inland Flood Data to ClimateCheck for only $1,600, even though the commercial value of this data is at least hundreds of thousands of dollars.

43. The next day, January 22, 2021, Stuart Whitfield, Fathom's new CEO emailed Mr. Eby at First Street to explain "Gavin [Lewis at Fathom] spoke with [ClimateCheck] yesterday and gave them notice cancelling the contract and requiring them to replace the Fathom-supplied data with an alternative dataset."

44. Over the next month, Mr. Eby continued to press Fathom for more information regarding the situation with ClimateCheck, expecting, in reliance on Mr. Whitfield's January 22, 2021 email, that Fathom had ceased providing First Street's confidential Future Inland Flood Data to ClimateCheck and that ClimateCheck had ceased using that data in its products.

45. On February 22, 2021, Fathom provided First Street with a "proposal" in which it admitted that it breached the parties' Agreement by purporting to license First Street's models and data to ClimateCheck. Specifically, Fathom admitted that:

> "Fathom agreed in the Agreement not to sell, license, supply, distribute or otherwise make available certain models to any 'First Street Competitor' (defined as 'any third party who (i) uses flood data (or similar data) to build consumer facing applications, products or services, or (ii) provides flood data (or similar data) to third parties who build consumer facing applications, products or services') , reflecting and protecting the monetisation model FSF/RF had in place at that time. ***Fathom inadvertently licensed a small amount of data to a potential First Street Competitor*** and, as soon as this was picked up, put in place steps to terminate that license arrangement."

46.     Despite Fathom's claims in this proposal, the amount of data licensed to ClimateCheck was not "small." Rather, Fathom purported to license and disclosed to ClimateCheck *all* of First Street's Future Inland Flood Data.

**E.     Fathom Refused to Immediately Cease Licensing the Future Inland Flood Data to ClimateCheck and Entered into a New License**

47.     Throughout February 2021, First Street remained concerned that ClimateCheck had not stopped using the Future Inland Flood Data in its products and asked Fathom to confirm on March 2, 2021, that ClimateCheck had ceased using First Street's proprietary models, proprietary data, and trade secrets, including the Future Inland Flood Data.

48.     On March 3, 2021, First Street again asked Fathom for confirmation of the situation with ClimateCheck when First Street saw that ClimateCheck represented on its website that it was providing "a flood risk rating based on the expected probability and depth of a flood between 2020 and 2050 according to Fathom's modeling." Upon information and belief, and based on First Street's review of the output from ClimateCheck's website, ClimateCheck was using First Street's proprietary Future Inland Flood Data in its product.

49.     Also on March 3, 2021, Mr. Whitfield at Fathom informed Mr. Eby at First Street for the first time that Fathom had licensed First Street's data to ClimateCheck nearly six months before, in September 2020. Thus, ClimateCheck has been using First Street's trade secrets for at least six months.

50.     ClimateCheck's website admitted that it uses Fathom's modeling to provide a flood risk rating, as shown below:

> **Surface Water and Riverine Flooding**
>
> These types of flooding can occur away from the coast. Fluvial, or riverine, flooding happens when a river, lake, or stream overflows onto the surrounding land. Pluvial flooding includes flash floods and surface water, and occurs when extreme rainfall creates a flood away from a body of water. We use the Fathom US flood hazard dataset to quantify the present and future risks of these types of floods. The Fathom analysis establishes current (2020) flood risk using historical meteorological observations and CMIP5 climate models to feed models of rainfall and runoff that capture flooding behavior across the United States. Flood risk in 2050 is modeled using the same climate model ensemble under the RCP 4.5 scenario. We provide a flood risk rating based on the expected probability and depth of a flood between 2020 and 2050 according to Fathom's modeling.

(From https://climatecheck.com/our-methodologies/; accessed March 9, 20201)

51.     ClimateCheck is improperly using First Street's Future Inland Flood Data in ClimateCheck's products, which are available to consumers and customers throughout the United States.

52.     On March 4, 2021—six weeks after Fathom represented it was cancelling the ClimateCheck contract—Fathom informed First Street that ClimateCheck had entered into agreements with two customers (whose identities are unknown to First Street) on the basis of the data provided by Fathom to ClimateCheck, which includes First Street's proprietary Future Inland Flood Data that Fathom wrongfully provided to ClimateCheck. ClimateCheck is therefore unfairly profiting from First Street's trade secrets.

53.     Fathom further informed First Street that it would take approximately four months for ClimateCheck to "swap out" First Street's Future Inland Flood Data from the products that ClimateCheck had sold to at least two existing customers. Although Fathom claimed that it would attempt to accelerate the time by which ClimateCheck had completed the data "swap," Fathom did not agree or offer to take steps to immediately cause ClimateCheck to cease using First Street's Future Inland Flood Data or any other First Street trade secret information.

54.     Indeed, Fathom informed First Street that rather than stopping the improper provision of First Street's data, Fathom entered into a ***new*** agreement with ClimateCheck for a four-month "wind down" period pursuant to which ClimateCheck would receive a "license" to continue using First Street's confidential and proprietary data.

55.     First Street never consented, and does not consent, to Fathom's purported license to ClimateCheck for the use of First Street's proprietary and confidential data during the "wind down" period.  Rather, First Street considers this to be an additional breach of the parties' agreement and additional misappropriation of First Street's confidential data.

**F.      ClimateCheck Refused to Immediately Cease Using First Street's Data in its Products.**

56.     On March 4, 2021, First Street also communicated directly with ClimateCheck and demanded that ClimateCheck immediately cease using First Street's proprietary and confidential data, including the Future Inland Flood Data.  ClimateCheck refused to do so.

57.     During that conversation, ClimateCheck claimed that it had the right to continue to use First Street's data, including the Future Inland Flood Data, because of the purported license granted to it by Fathom.  ClimateCheck further informed First Street that it did not believe it had any obligation to remove First Street's Future Inland Flood Data from its systems, or otherwise ever cease using First Street's propriety and confidential data.  Rather, ClimateCheck claimed that the removal of First Street's proprietary, confidential Future Inland Flood Data from its systems and/or ClimateCheck's continued use of such data was up to ClimateCheck's sole discretion.  ClimateCheck asserted that was only taking steps to do so as a "favor" to Fathom, who ClimateCheck understood had made a mistake.

G. **First Street Has Suffered, and Continues to Suffer, Irreparable Competitive Harm From Fathom's Improper Disclosure of First Street's Data and ClimateCheck's Ongoing Use of First Street's Trade Secrets**

58.     Fathom's wrongful disclosure of First Street's proprietary and confidential information, in breach of the parties' agreement, has caused, and continues to cause, serious irreparable, competitive harm to First Street.

59.     Fathom has purportedly granted ClimateCheck—a direct competitor to First Street—a license to use First Street's confidential and proprietary data.

60.     The use of First Street's confidential and proprietary data by a ClimateCheck, a direct competitor, causes serious competitive harm to First Street. ClimateCheck has not expended the resources to develop its own flood risk data or hazard layers. Thus, its ability to offer flood risk modeling to customers is based solely on Fathom having breached the Agreement and given First Street's proprietary data to ClimateCheck.

61.     Upon information and belief, ClimateCheck markets its ability to provide a "complete" product that addressing many different environmental risks (e.g., wildfire). Flooding is a key risk, yet ClimateCheck is relying on First Street's confidential Future Inland Flood Data—which it obtained for far less than market value through Fathom's breach of the Agreement—to market itself as having a flood risk model.

62.     Not only has ClimateCheck already entered into contracts with at least two customers on the basis of First Street's Future Inland Flood Data, ClimateCheck's continued use of First Street's data threatens First Street's ability to enter into new deals of its own by weakening First Street's position as a market leader and innovator. Indeed, both First Street and ClimateCheck are actively seeking business from the two largest potential customers of flood risk models—Zillow and Redfin. And, on information and belief, ClimateCheck is improperly using First Street's proprietary flood models to win that business away from First Street.

18

63.     Further, the value of First Street's confidential data depends in part on the fact that it is only available for use and exploitation by First Street, and only First Street may authorize its use by others.  ClimateCheck's continued use and exploitation of that data, including its purported licensing to ClimateCheck's deal partners, dilutes and undercuts the data's value.

### FIRST CAUSE OF ACTION
**(Breach of Contract as to Fathom)**

64.     The Agreement and the accompanying Statement of Work No. 1 constitute a valid, enforceable contract between First Street and Fathom.

65.     Pursuant to Section 2 of the Agreement and Statement of Work No. 1, Fathom was prohibited from re-selling First Street's intellectual property, including the Future Inland Flood Data, to a competitor of First Street, like ClimateCheck.

66.     Pursuant to Section 4 of the Agreement, Fathom was required to safeguard First Street's Confidential Information, including the Future Inland Flood Data.

67.     Fathom breached the Agreement and Statement of Work No. 1 by providing First Street's Future Inland Flood Data to First Street's direct competitor, ClimateCheck.

68.     Fathom has conceded that it breached the Agreement and Statement of Work No. 1 by providing First Street's Future Inland Flood Data to First Street's direct competitor, ClimateCheck.

69.     Fathom breached the Agreement by failing to safeguard First Street's Future Inland Flood Data and providing ClimateCheck access to that data by "mistake."

70.     First Street has suffered, and continues to suffer, harm as a result of Fathom's breach.  ClimateCheck is profiting from First Street's intellectual property despite having no right to use it.  Indeed, ClimateCheck has already incorporated First Street's Future Inland Flood

Data into software programs that ClimateCheck has sold to customers without providing any compensation to First Street.

71.     In addition, Fathom's refusal to cease providing First Street's Future Inland Flood Data to ClimateCheck and ClimateCheck's refusal to cease using First Street's Future Inland Flood Model, has caused and is continuing to cause irreparable harm to First Street's competitive position in the marketplace.

72.     Finally, First Street has been forced to incur unnecessary expenses in order to enforce its intellectual property rights because ClimateCheck has claimed a right to use First Street's Future Inland Flood Data under ClimateCheck's license with Fathom. Accordingly, Fathom is required to fully indemnify First Street for the costs, including attorneys' fees, in bringing this action.

73.     In addition to seeking injunctive relief to enjoin Fathom from continuing to provide First Street's trade secrets to ClimateCheck, First Street will pursue any damages claims against Fathom in arbitration, as required under the Agreement, for the injuries that First Street has already incurred as a result of Fathom providing First Street's trade secrets to ClimateCheck in September 2019.

## SECOND CAUSE OF ACTION
### (Violation of the DTSA, 18 U.S. Code § 1836, as to ClimateCheck)

74.     First Street's Future Inland Flood Data is a trade secret.  The Future Inland Flood Data is generated using proprietary software models; aside from Fathom and First Street, the software codes used to create the models and generate the Future Inland Flood Model are not known to any other persons or entities and cannot easily be reverse engineered or duplicated.

75.     The Future Inland Flood Data is related to First Street's flood risk products that are offered to consumers throughout the United States.  And ClimateCheck is improperly using

First Street's Future Inland Flood Data in ClimateCheck's products, which are available to consumers through the United States. Thus, the Future Inland Flood Data is used in, and intended for use in, interstate commerce.

76.     First Street takes every possible measure to ensure that the Future Inland Flood Data is kept in secrecy, including by insisting on strict confidentiality provisions in all license agreements.

77.     Further, the value of the Future Inland Flood Data to First Street is significant. The Future Inland Flood Data is one-of-a kind and confers a distinct competitive advantage on First Street in the marketplace for flood modeling. First Street spent millions of dollars to develop this data, and its commercial value is at least hundreds of thousands of dollars. Accordingly, the Future Inland Flood Data is extremely valuable to competitors, such as ClimateCheck, that have not spent the resources to develop similar flood risk data.

78.     Fathom breached its Agreement and Statement of Work No. 1 with First Street by providing ClimateCheck a license to use the Future Inland Flood Data. Accordingly, ClimateCheck's access to and use of First Street's Future Inland Flood Data was unauthorized and improper.

79.     ClimateCheck knew, or had reason to know, that the Future Inland Flood Data is a trade secret of First Street and that it was provided to ClimateCheck without First Street's authorization or consent.

80.     Despite knowing that Fathom had no right to license the Future Inland Flood Data to ClimateCheck, ClimateCheck has used and continues to use First Street's Future Inland Flood Data in software models that ClimateCheck has already sold to customers and is continuing to market to potential customers of both ClimateCheck and First Street.

81.     First Street has not been compensated in any way as a result of ClimateCheck improperly using the Future Inland Flood Data.

82.     As a result of ClimateCheck's use of First Street's Future Inland Flood Data, First Street has suffered, and continues to suffer, irreparable harm to its competitive position as well as damages resulting from ClimateCheck's unauthorized use of First Street trade secrets

**THIRD CAUSE OF ACTION**
**(Misappropriation of Trade Secrets as to ClimateCheck)**

83.     First Street's Future Inland Flood Data is a trade secret.  The Future Inland Flood Data is generated using proprietary software models; aside from Fathom and First Street, the software codes used to create the models and generate the Future Inland Flood Model are not known to any other persons or entities and cannot easily be reverse engineered or duplicated.

84.     First Street takes every possible measure to ensure that the Future Inland Flood Data is kept in secrecy, including by insisting on strict confidentiality provisions in all license agreements.

85.     Further, the value of the Future Inland Flood Data to First Street is significant. The Future Inland Flood Data is one-of-a kind and confers a distinct competitive advantage on First Street in the marketplace for flood modeling.  First Street spent millions of dollars to develop this data, and its commercial value is at least hundreds of thousands of dollars. Accordingly, the Future Inland Flood Data is extremely valuable to competitors, such as ClimateCheck, that have not spent the resources to develop similar flood risk data.

86.     Fathom breached its Agreement and Statement of Work No. 1 with First Street by providing ClimateCheck a license to use the Future Inland Flood Data.  Accordingly, ClimateCheck's access to and use of First Street's Future Inland Flood Data was unauthorized and improper.

22

87. ClimateCheck knew, or had reason to know, that the Future Inland Flood Data is a trade secret of First Street and that it was provided to ClimateCheck without First Street's authorization or consent.

88. Despite knowing that Fathom had no right to license the Future Inland Flood Data to ClimateCheck, ClimateCheck has used and continues to use First Street's Future Inland Flood Data in software models that ClimateCheck has already sold to customers and is continuing to market to potential customers of both ClimateCheck and First Street.

89. First Street has not been compensated in any way as a result of ClimateCheck improperly using the Future Inland Flood Data.

90. As a result of ClimateCheck's use of First Street's Future Inland Flood Data, First Street has suffered, and continues to suffer, irreparable harm to its competitive position as well as damages resulting from ClimateCheck's unauthorized use of First Street trade secrets.

## PRAYER FOR RELIEF

WHEREFORE, First Street respectfully requests that the Court enter judgment against Fathom and ClimateCheck as follows:

A. Temporarily, preliminarily, and permanently enjoining Fathom, its agents, officers, employees, representatives, agents, subsidiaries, and affiliates from providing, licensing or otherwise supplying any First Street trade secrets to ClimateCheck or any other First Street competitor;

B. Temporarily, preliminarily, and permanently enjoining Fathom, its agents, officers, employees, representatives, agents, subsidiaries, and affiliates from providing technical support or software updates to ClimateCheck related to any First Street trade secrets;

C.    Temporarily, preliminarily, and permanently enjoining ClimateCheck, its agents, officers, employees, representatives, agents, subsidiaries, and affiliates from using in any manner, any First Street trade secrets;

D.    Commanding ClimateCheck, its agents, officers, employees, representatives, agents, subsidiaries, and affiliates to immediately remove and destroy any First Street trade secrets from any data models, data sets, consumer facing products, or other applications;

E.    Commanding ClimateCheck, its agents, officers, employees, representatives, agents, subsidiaries, and affiliates to inform any of its current or prospective business partners, to which ClimateCheck has attempted to do business based on improperly using First Street's trade secrets, that ClimateCheck has improperly relied on and used First Street's trade secrets to market flood modeling capabilities;

F.    Awarding First Street damages against ClimateCheck in an amount to be determined at trial due to ClimateCheck's past misappropriation of First Streets trade secrets;

G.    Awarding First Street reasonable attorneys' fees and costs; and

H.    Awarding First Street any further relief that this Court deems just and proper.

Dated: March 15, 2021  
New York, New York

Respectfully submitted,

_/s/Jamie A. Levitt_  
Jamie A. Levitt  
Adam J. Hunt  
Janie C. Buckley  
MORRISON & FOERSTER LLP  
250 West 55th Street  
New York, New York 10019  
Telephone:  (212) 468-8000  
Facsimile:   (212) 468-7900  
Email: jlevitt@mofo.com  
adamhunt@mofo.com  
jbuckley@mofo.com  

*Attorneys for First Street*  
*Foundation*

ny-2076921